IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GERMAINE JONES, Husband, and )
LASHON JONES, Wife, )
)
        Plaintiffs, )
)
  v. )    No. 06 C 6285
)
HERBERT KANNEGIESSER GmbH, )
a foreign corporation, )
)
        Defendant. )

## **MEMORANDUM OPINION AND ORDER**

     Plaintiff Germaine Jones, who works and resides in Michigan, alleges that he was injured at work while using a membrane press to press water out of clothes. As a result, Germaine's left arm was amputated. Allegedly, Passat Maschineenbau GmbH manufactured the press in 1982. Defendant Herbert Kannegiesser GmbH, a German corporation, is alleged to be the purchaser and successor to Passat. In the presently pending Amended Complaint, Germaine brings claims for negligence, strict liability, and breach of warranty. Plaintiff Lashon Jones, who is Germaine's wife, brings a claim for loss of consortium.

     Plaintiffs initially brought suit against Kannegiesser in state court in Michigan. Kannegiesser removed the case to

federal court. Conceding that they did not have personal jurisdiction over Kannegiesser in Michigan, plaintiffs requested that the case be transferred to federal court in Illinois and that motion was granted. Kannegiesser has again moved to dismiss for lack of personal jurisdiction, contending that personal jurisdiction is also lacking in Illinois.

The burden is on plaintiffs to show that personal jurisdiction over defendant is proper. Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003); Steel Warehouse of Wisconsin, Inc. v. Leach, 154 F.3d 712, 714 (7th Cir. 1998). For purposes of ruling on the question of personal jurisdiction, all uncontroverted facts alleged by plaintiffs, all facts adequately supported by any affidavit or other evidence submitted by plaintiffs, and all uncontroverted facts supported by defendant's affidavits or documentary submissions are assumed to be true. See Purdue Research, 338 F.3d at 782-83; McIlwee v. ADM Industries, Inc., 17 F.3d 222, 223 (7th Cir. 1994); Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal, 859 F.2d 1302, 1306 n.7 (7th Cir. 1988); Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987); Minemyer v. R-Boc Representatives, Inc., 2007 WL 2461666 *2 (N.D. Ill. Aug. 24, 2007). The parties were permitted to engage in discovery prior to completing briefing on defendant's motion to

dismiss. However, since the ruling on personal jurisdiction is being made on written submissions, not following an evidentiary hearing, plaintiffs are only required to make a <u>prima facie</u> showing in support of their claimed basis for personal jurisdiction. <u>Purdue Research</u>, 338 F.3d at 782-83; <u>Central States, Southeast & Southwest Areas Pension Fund v. Phencorp Reinsurance Co.</u>, 440 F.3d 870, 876 (7th Cir. 2006); <u>Minemyer</u>, 2007 WL 2461666 at *2.

In a diversity case such as this one, the law of the forum state is applied in determining whether personal jurisdiction may properly be exercised over a non-resident defendant. <u>Purdue Research</u>, 338 F.3d at 779; <u>Hyatt International Corp. v. Coco</u>, 302 F.3d 707, 713 (7th Cir. 2002). The Illinois long-arm statute, though, has a "catch-all" provision permitting the "exercise [of] jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). There is no "operative difference" between the limits imposed by the Illinois Constitution and federal due process limits on personal jurisdiction. <u>Hyatt</u>, 302 F.3d at 715; <u>Keller v. Henderson</u>, 359 Ill. App. 3d 605, 834 N.E.2d 930, 941 (2d Dist. 2005), <u>appeal denied</u>, 217 Ill. 2d 603, 844 N.E.2d 966 (2006); <u>Chelios v. National Hockey League Players' Association</u>, 2007 WL 178326 *8

(N.D. Ill. Jan. 18, 2007); Khorrami v. Rolince, 493 F. Supp. 2d 1061, 1070 (N.D. Ill. 2007). Thus, personal jurisdiction analysis collapses into a federal due process inquiry. Hyatt, 302 F.3d at 715-16; United States Gypsum Co. v. LaFarge North America, Inc., ___ F. Supp. 2d ___, 2007 WL 1100804 *32 (N.D. Ill. April 3, 2007); Brown v. SBC Communications, Inc., 2007 WL 684133 *10-11 (S.D. Ill. March 1, 2007); Chelios, 2007 WL 178326 at *8. Due process requires "that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state and that the exercise of personal jurisdiction over that defendant would comport with 'traditional notions of fair play and substantial justice.'" Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549 (7th Cir. 2004).

In this case, plaintiffs do not contend that any of the acts underlying their claims occurred in Illinois. They rely on there being general jurisdiction over defendant in Illinois based on defendant doing business in Illinois. "General jurisdiction is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum" state. Purdue Research, 338 F.3d at 787 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). "These contacts must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that

it would be fundamentally fair to require it to answer in [state] court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." Purdue Research, 338 F.3d at 787.

The facts about defendant's contacts with Illinois that are taken as true for purposes of ruling on defendant's motion to dismiss are as follows. Plaintiffs focus on certain equipment that was sold to and installed in Illinois. The sales were by Kannegiesser USA ("KUSA"), a United States subsidiary of defendant. There is no contention that KUSA is a sham corporation or that there is any basis for piercing the corporate veil. However, evidence supports that KUSA is a sales and service company that does not have any of its own production facilities. KUSA only sells products manufactured by defendant. Plaintiffs rely on defendant manufacturing and supplying the equipment and providing service for the equipment.

In 2001, Northern Illinois Hospital Supply ("NIHS") purchased washing equipment from KUSA for installation at NIHS's Rockford, Illinois facility. This included a 16-compartment washing machine, extraction press, conveyor systems, and a dryer. The extraction press alone weighs approximately 15 tons. Although sold by KUSA, an order confirmation was issued by defendant from Germany with a price stated in deutschmarks. The

equipment was shipped directly from defendant to Rockford. KUSA employees performed the installation, but received technical assistance from employees of defendant. Shortly after the initial setup, one employee of defendant came to Rockford to conduct training and perform adjustments on the machinery. After installation, defendant's employees continue to provide technical assistance via email and telephone.

Since the installation in 2001, the NIHS equipment has required frequent service and replacement parts. KUSA generally performs the servicing, but the parts are supplied by defendant. When supplying equipment for an installation like NIHS's, defendant will be assured of a steady stream of sales of replacement parts. At one point, when there were various problems with the NIHS equipment, an employee of defendant came to the United States to help counsel NIHS regarding problems with the equipment. One time, four NIHS employees went to defendant's plant in Germany to obtain training for the NIHS equipment.

The NIHS installation includes a "teleservice NetLink" module. This enables monitoring of the equipment from an outside computer, including either an NIHS employee monitoring the equipment from a home computer or defendant monitoring the equipment from Germany. While employees of defendant have had access to this link, employees of KUSA did not. There is no

evidence as to how often one of defendant's employees used this link. It has been used by an employee of defendant at least once.

In 2004, NIHS was dissatisfied with how the equipment was functioning. Defendant's sales director made a trip to Illinois to meet with NIHS's Board of Directors. He made a proposal to NIHS as to how to rectify the problems. When a drum broke in September 2005, two of defendant's technicians came to NIHS for several days to perform weld work.

In 2002, defendant's production manager traveled to Illinois to assist in the sale of a large folding robot to Ellis Corporation. Defendant employees participated in the installation of the robot at Hospital Laundry Services in Wheeling, Illinois. The actual sales contract, however, was with KUSA.

Defendant has also shipped equipment directly to Five Star Laundry in Chicago and provided technical assistance. Again, the actual sales contract was with KUSA.

Defendant does not maintain any offices in Illinois nor does it regularly engage in direct solicitation of sales from Illinois companies. None of the contacts relied upon by plaintiffs involved a sales contract directly between defendant and an Illinois company. While the contacts with NIHS are

substantial, they are still sporadic in nature. The contacts would likely be enough if the claims in this case related to any of the equipment used by NIHS, Ellis, or Five Star. The various contacts with these three companies, though, cannot be characterized as continuous and systematic business contacts in Illinois. It would not be fundamentally fair to permit general jurisdiction over defendant in Illinois based on these limited contacts. Cf. Purdue Research, 338 F.3d at 788; First National Bank v. El Camino Resources, Ltd., 447 F. Supp. 2d 902, 906 (N.D. Ill. 2006). Adventus Americas Inc. v. Innovative Environmental Technologies, Inc., 2007 WL 704938 *7 (N.D. Ill. March 5, 2007), which is cited by plaintiffs, is distinguishable. That case involved more extensive contacts with Illinois. The defendant had conducted four environmental remediations in Illinois, including one that lasted for a year and a half, and had also solicited business in Illinois and formerly had an office in Illinois.

This case will be dismissed without prejudice for lack of personal jurisdiction. Plaintiffs do not request that the case be transferred to a district in another state where defendant may have more extensive contacts.

IT IS THEREFORE ORDERED that defendant's motion to dismiss for lack of personal jurisdiction [30] is granted. The

Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiffs dismissing plaintiffs' cause of action without prejudice for lack of personal jurisdiction.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: OCTOBER 26, 2007